IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

SHARON HARRISON                                                            PLAINTIFF

v.                                                  CIVIL ACTION NO. 1:23-CV-25-SA-DAS

HOUCHENS FOOD GROUP, INC.;
JOHN DOES 2-3                                               DEFENDANTS

ORDER AND MEMORANDUM OPINION

On February 10, 2023, Sharon Harrison filed her First Amended Complaint [2] in the Circuit Court of Itawamba County, Mississippi. The First Amended Complaint [2] asserts a negligence claim against Houchens Food Group, Inc. and John Does 2-3. Houchens removed the case to this Court on February 21, 2023, premising jurisdiction on diversity of citizenship. Now before the Court is Houchens' Motion for Summary Judgment [25]. The Motion [25] has been fully briefed and is ripe for review. The Court is prepared to rule.

*Relevant Factual Background*

On May 27, 2021, Harrison and two friends went to Food Giant—a grocery store in Fulton, Mississippi—to purchase plate lunches from the deli.[1] The store's surveillance video from the day in question shows Harrison and her two friends entering the store at 10:56 a.m. and taking a left to walk toward the deli. Approximately six minutes later, Harrison can be seen walking toward the exit via the same path and wiping her right hand on her right leg. As Harrison was walking, her right leg slipped forward and out from under her, and she landed hard on her left leg.

At her deposition, Harrison testified that she slipped on water. She alleged that her pants were wet after the fall. She further testified that she saw tracks that were approximately five to

---

[1] Though never specifically stated, it appears that Houchens Food Group, Inc. owns Food Giant. *See* [2] at p. 2 ("Defendant's retail store Food Giant"); [25] at p. 1 ("Houchens' Food Giant Store").

eight feet long "where people had run through" the water on the floor. [30], Ex. 2 at p. 4-5. Harrison testified that she did not know how the water or tracks came to be on the floor, if anyone caused the water or tracks to be on the floor, or when the water or tracks came to be on the floor. The surveillance video shows store employees mopping and wiping the floor around Harrison after she fell.

The surveillance video also shows an employee rushing from the front office over to Harrison after she fell. Assistant Manager Amber Dunigan submitted an affidavit identifying herself as that employee. Dunigan called Harrison's daughter and an ambulance after Harrison fell.

Harrison thereafter filed suit, alleging that Houchens' negligence caused her fall. In the present Motion [25], Houchens argues that Harrison's claim should be dismissed because store employees neither caused nor had actual or constructive knowledge of an alleged dangerous condition. Harrison opposes the Motion [25].

*Summary Judgment Standard*

Summary judgment is warranted when the evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Nabors v. Malone*, 2019 WL 2617240, at *1 (N.D. Miss. June 26, 2019) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

"The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.'" *Id*. (quoting *Celotex*, 477 U.S. at 323, 106 S. Ct.

2

2548). "The nonmoving party must then 'go beyond the pleadings' and 'designate specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Celotex*, 477 U.S. at 324, 106 S. Ct. 2548). Importantly, "the inferences to be drawn from the underlying facts contained in the affidavits, depositions, and exhibits of record must be viewed in the light most favorable to the party opposing the motion." *Waste Mgmt. of La., LLC v. River Birch, Inc.*, 920 F.3d 958, 964 (5th Cir. 2019) (quoting *Reingold v. Swiftships, Inc.*, 126 F.3d 645, 646 (5th Cir. 1997)). However, "[c]onclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial." *Nabors*, 2019 WL 2617240 at *1 (citing *TIG Ins. Co. v. Sedgewick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002)) (additional citations omitted).

*Analysis and Discussion*

As this is a diversity jurisdiction case, Mississippi law governs. *See*, *e.g.*, *Klocke v. Watson*, 936 F.3d 240, 244 (5th Cir. 2019) (citing *Hanna v. Plumer*, 380 U.S. 460, 465, 85 S. Ct. 1136, 14 L. Ed. 2d 8 (1965)) ("The *Erie* line of authorities holds that substantive state law must be applied in federal courts in diversity cases[.]").

Harrison's negligence claim is commonly known as a premises liability claim. Premises liability, as a theory of negligence, requires a plaintiff to prove that the defendant breached a duty. *See Thomas v. Boyd Biloxi LLC*, 360 So. 3d 204, 213 (Miss. 2023) (citing *Double Quick, Inc. v. Moore*, 73 So. 3d 1162, 1166 (Miss. 2011)). Under Mississippi law, "[a] business owner owes a duty to an invitee to keep its premises in a reasonably safe condition and to warn the invitee of dangerous conditions that are not readily apparent." *Clinton Healthcare, LLC v. Atkinson*, 294 So. 3d 66, 71 (Miss. 2019) (citing *Drennan v. Kroger Co.*, 672 So. 2d 1168, 1170 (Miss. 1996)).[2]

---

[2] The parties agree that Harrison was a business invitee to whom Houchens owed a duty.

3

"However, business owners are not insurers against all injuries." *Bonner v. Imperial Palace of Miss., LLC*, 117 So. 3d 678, 682 (Miss. Ct. App. 2013) (citing *Munford, Inc. v. Fleming*, 597 So.2d 1282, 1284 (Miss. 1992)). "Strict liability is not imposed on [business owners] in premises liability cases." *Id.* (citing *Martin v. Rankin Circle Apartments*, 941 So. 2d 854, 864 (Miss. Ct. App. 2006)). "Mere proof 'of the occurrence of a fall on a floor within [the] business premises is insufficient to show negligence on the part of the proprietor.'" *Id.* (citing *Stanley v. Boyd Tunica, Inc.*, 29 So. 3d 95, 97 (Miss. Ct. App. 2010)).

In a slip-and-fall case, to show a business owner breached its duty, "the plaintiff must prove one of three things—(1) that the business owner, through the negligent act of its employees, created the dangerous condition that allegedly caused the fall, or (2) that the business owner, while not creating the condition, did have actual knowledge of it, or (3) that 'the dangerous condition existed for a sufficient amount of time to establish constructive knowledge[.]'" *Dolgencorp, LLC v. Payton*, 366 So.3d 838, 842 (Miss. 2023) (quoting *Munford*, 597 So.2d at 1284).

I.  *Negligent Act or Actual Knowledge*[3]

In the following portion of her Response Memorandum [31], Harrison appears to argue that Houchens created the dangerous condition or had actual knowledge of the water on the floor:

> Houchens relies heavily on the video footage provided to negate Plaintiff's allegations that Defendant had actual or constructive notice of the water-like substance prior to Plaintiff's fall. However, Defendant failed to mention that Jennifer Brock, Plaintiff's daughter, received a phone call from a female who identified herself as the manager at Food Giant to inform her that her mother had

---

[3] At the outset, the Court feels compelled to note one issue that the parties point out but do not expand on. The surveillance video shows "wet floor" cones stacked on the carpet in front an ice machine approximately eight to ten feet away from where Harrison fell. In its Memorandum [26], Houchens points to Harrison's deposition testimony wherein she states that she saw the cones and did not look at the floor after walking past them. *See* [30], Ex. 2 at p. 10. For her part, Harrison contends that Houchens "omits the fact that the caution cones, approximately five (5), were stacked and stored on a carpeted area away from the water-like substance." [31] at p. 4. Each party devotes one sentence to the existence of the cones but offers no argument whatsoever connecting the cones to any theory of liability.

4

>fallen and was injured. During this conversation, Ms. Brock explained that the manager told her that they had been mopping and that [is] where Plaintiff fell.

[31] at p. 7.

Thus, while Harrison never explicitly argues that Houchens created the dangerous condition by mopping the floor or that it had actual knowledge of water on the floor, Harrison essentially alleges that a manager admitted to Brock that employees had recently mopped the spot where Harrison fell. At her deposition, Brock testified on the issue as follows:

>Q. Okay. Let's back up to the phone call that you had with someone from Food Giant. Other than telling you that she had fallen and that she was going to the hospital, and which hospital would you like her to go to, did they give you any indication of how the fall occurred or anything else, other than what you told me?
>
>A. They just told me that they were mopping and that she had fallen.
>
>Q. They told you they were mopping?
>
>A. Uh-huh (affirmative response).
>
>Q. Did they tell you how far in advance of mopping?
>
>A. They didn't.
>
>Q. Did they tell you where they were mopping?
>
>A. They didn't.
>
>. . .
>
>Q. Now, I'm going to ask you, and is that something that you think that maybe you've had a discussion with, and it stuck in your brain that maybe they were mopping, or do you recall that she said they were mopping?
>
>A. That's what the lady had told me.
>
>. . .

5

> Q. Now, what's this about mopping?
>
> A. They told me that they had just got through mopping. I don't know if – if it – like I said, I wasn't –
>
> Q. Did they say anything other than the word mopping?
>
> A. She just said she had fallen and I assumed they were mopping because the lady said they were mopping.
>
> Q. She's falling [sic] and they were mopping. That's what she told you?
>
> A. That's what she told me.

[30], Ex. 3 at p. 6-7, 9.

Brock's testimony regarding what the manager told her is ambiguous. She never specifically stated that the manager told her they were mopping *prior to* Harrison's fall, though her testimony arguably indicates that she assumed as much based on her conversation with the manager. While the Court is generally required to resolve ambiguities and make all reasonable inferences in favor of the nonmovant, the Court need not accept a party's version of events that is "blatantly contradicted" by video evidence "so that no reasonable jury could believe it." *Granados v. Wal-Mart Stores, Inc.*, 653 F. App'x 366, 368-69 (5th Cir. 2016) (discrediting plaintiff's contention that employee was present in the aisle where plaintiff slipped because video clearly showed employee was not on that aisle) (citing *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007)). Here, the surveillance video, which begins six minutes and forty-five seconds prior to Harrison's fall, shows no mopping in the area prior to the fall. *See* [25], Ex. 4 at 00:00-06:45. The mopping shown on the video begins approximately three minutes *after* Harrison's fall. *See id.* at 09:40.[4] Thus, to the extent Brock's testimony is a contention that the

---

[4] According to the affidavit of Assistant Manager Amber Dunigan, Dunigan was the manager sitting next to Harrison on the surveillance video, and Dunigan called Brock as the employees finished mopping. *See*

manager admitted that employees were mopping before Harrison slipped and fell, the Court need not credit the contention, as it is blatantly contradicted by the video evidence.

Harrison argues that additional video evidence (beginning earlier than six minutes and forty-five seconds prior to the fall) would prove that Houchens had actual or constructive knowledge of the water on the floor. To the extent Harrison contends that mopping occurred prior to the start of the video, the record lacks evidentiary support for that position. Harrison cannot overcome summary judgment with speculation that additional evidence not in the record may help her case. *See Jones v. United States*, 936 F.3d 318, 322 (5th Cir. 2019) ("'[S]peculation' cannot defeat summary judgment on a required element of the claim.") (citation omitted).

Moreover, in its Reply Memorandum [37], Houchens indicated that Harrison did not seek additional video footage in discovery, and the Court notes that Harrison did not request to file a sur-reply or otherwise attempt to rebut that contention in any way. Harrison did not supplement Brock's deposition with an affidavit resolving any ambiguity as to what the manager told her about employees mopping the floor. Overall, Harrison has submitted no evidence creating a question of fact as to Houchens' negligent creation of or actual knowledge of the water on the floor.

---

[36], Ex. 1 at p. 2-3. In her affidavit, Dunigan contends that she told Brock "that store personnel had just finished mopping and [she] was referencing the mopping that took place after Ms. Sharon Harrison had fallen which you can see in the store video." *Id.* The affidavit further states that Dunigan did not tell Brock that the mopping occurred before the fall. *Id.* Houchens submitted stills taken from the surveillance video, purporting to show Dunigan on the phone with Brock. *See* [36], Ex. 2. Dunigan is partly obstructed by a box and cannot clearly be seen on the phone. However, around the time the employees finish mopping, the video shows Dunigan handing a cell phone to Harrison. [25], Ex. 4 at 09:54. Cognizant of the obligation to resolve all factual disputes in the light most favorable to Harrison, the Court simply notes the content of the affidavit for the sake of completeness. Where Brock's testimony is discredited by the surveillance video, the Court considers "the facts in the light depicted by the videotape." *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011) (citing *Scott*, 550 U.S. at 381, 127 S. Ct. 1769).

*II.     Constructive Knowledge*

Harrison may alternatively succeed on a premises liability claim by proving that Houchens had constructive knowledge of the alleged dangerous condition. "Constructive knowledge is established where the condition is shown to have existed for such a length of time that the operator, through the exercise of reasonable care, should have known of its existence." *Hearn v. Square Prop. Inv., Inc.*, 297 So. 3d 292, 296 (Miss. Ct. App. 2020) (quoting *Haggard v. Wal-Mart Stores, Inc.*, 75 So.23d 1120, 1125 (Miss. Ct. App. 2011)). "[T]he court will not indulge in presumptions for the deficiencies in plaintiff's evidence as to the length of time the hazard existed; therefore, the plaintiff must produce admissible evidence as to the time period in order to establish the operator's constructive knowledge." *Id.* (quoting *Haggard*, 75 So.3d at 1126). "The plaintiff must present *specific* proof as to the relevant actual length of time." *Id.* (quoting *Haggard*, 75 So. 3d at 1126) (emphasis added).

*A.     Photograph and Video Evidence*

Like above, Harrison argues that additional photographs and video footage would show that Houchens should have known of a dangerous condition on the floor. Harrison asserts that the two photographs Houchens provided in discovery do not show the exact location of the water. According to Harrison, the surveillance video shows that the water was located on her right side and that the right side of her body landed on top of the water, but the photographs only show the left side of her body and the area to the left of the water.

The surveillance video shows Harrison's right foot slip out from under her as she was walking. *See* [25], Ex. 4 at 06:45. It shows that she landed on the approximate location where her foot slipped and she then rolled over onto her right side. *Id.* at 06:49. The photographs show

8

Harrison and the floor around her after her fall, while she was laying on her right side. [30], Ex. 1 at p. 1-2.[5]

The Court finds two cases instructive here. In *Ducksworth v. Wal-Mart Stores, Inc.*, 832 So. 2d 1260, 1262 (Miss. Ct. App. 2002), where a slip-and-fall plaintiff produced a photograph of the puddle in which she slipped that showed the puddle was both dirty and contained footprints and shopping-cart tracks, the Mississippi Court of Appeals found that the condition of the puddle in the photograph created a question of fact as to how long the puddle had been on the floor.

In *Hearn*, a 2020 Mississippi Court of Appeals decision, the plaintiff, Clair Hearn, and her son, Mario Richmond, went to Piggly Wiggly, where Hearn slipped and fell after being in the store for less than 10 minutes. 297 So. 3d at 294. "During their depositions, Hearn and Richmond stated that they did not see the puddle until after Hearn fell. And Hearn admitted that she did not know how long the puddle had been on the floor. However, both Hearn and Richmond stated that the puddle had footprints and shopping-cart tracks in it." *Id.* at 296. Comparing Hearn's evidence to the plaintiff's evidence in *Ducksworth*, the *Hearn* court found that "the photograph in *Ducksworth* was specific proof as to the 'relevant actual length of time'" the puddle existed but "Hearn and Richmond's deposition testimony gave no indication as to the 'actual length of time' the puddle existed. Although they both state that the puddle had footprints in it, this only proves that the puddle existed. Without more, it is impossible to determine whether that period of time was for several minutes or several hours." *Id.* The court further emphasized that the surveillance video showed no footprints or shopping-cart tracks in the area of Hearn's fall. *Id.* Therefore, the court concluded that Hearn failed to present evidence showing that Piggly Wiggly should have known there was a puddle on the floor. *Id.* at 297.

---

[5] The Court notes that the surveillance video shows a male employee who had been in the front office with Dunigan taking photographs of Harrison and the floor after her fall. *See* [25], Ex. 4 at 08:56-09:05.

Here, like in *Ducksworth*, Harrison produced photographs of the area in which she fell. *See* [30], Ex. 1. However, the photographs in *Ducksworth* showed a puddle with dirty track marks in it, but the photographs in this case do not show water or track marks at all. *See* [30], Ex. 1.

Further, the water and track marks are not visible on the surveillance video. The video shows Harrison and her friends walk through the area where Harrison fell upon entering the store. [25], Ex. 4 at 00:59. Before Harrison returned to the area and fell, four customers walked through the area (though only two of them appeared to step on the exact tile on which Harrison slipped), and no footprints or spills are visible on the video after they moved through the area. *Id.* at 02:56-4:53. In other words, because the water, track marks, or source of the spill is not clearly visible on the video, the photographs and surveillance video do not provide "specific proof as to the relevant actual length of time" the water existed on the floor. *Hearn*, 297 So. 3d at 294.

And like in *Hearn*, while Harrison testified that she saw water with five- to eight-feet-long track marks in it *after* she fell, her testimony provides no indication as to how long the water and track marks had been on the floor prior to her fall. *See* [30], Ex. 2 at p. 4-5. She testified as follows:

> Q. Do you know when the water came to exist on the floor?
>
> A. No, sir.
>
> Q. Do you have any knowledge, personal knowledge, if employees of Houchens and Food Giant knew that there was water on the floor where you fell?
>
> A. No, sir. But they had tracks. There was tracks where people had run through.
>
> Q. All right. When did you see tracks?
>
> A. Right after they, you know, right after I fell, I turned around and looked.
>
> . . .
>
> Q. Do you know when those tracks came to exist on the floor?

10

      A.      No, sir.

      Q.      Do you know how long they had been on the floor?

      A.      No, sir.

[30], Ex. 2 at p. 4, 7.

Just as in *Hearn*, Harrison's deposition testimony only indicates that water with track marks *existed*; it does not indicate *how long* the water may have been on the floor.[6]

Crucially, like above, while Harrison makes the speculative argument that additional photographs and video footage would demonstrate that Houchens had constructive knowledge of the water on the floor, the record contains no competent summary judgment evidence indicating how long the water had been on the floor. As such, Harrison cannot establish that the water was on the floor long enough such that Houchens should have known about it. *See Hearn*, 297 So. 3d at 296 ("the plaintiff must produce admissible evidence as to the time period in order to establish the operator's constructive knowledge.").

    *B.*    *Inspection Records*

Lastly, Harrison argues that "[t]he lack of evidence that Houchens conducted inspections, coupled with video footage of four Houchens employees in the entranceway area where Plaintiff fell, may cause a jury to reasonably conclude that proper inspections would have uncovered the water-like substance on the floor." [31] at p. 6.

For its part, Houchens points to evidence that employees inspected the store on the day in question. The affidavit of Assistant Manager Amber Dunigan states that Dunigan routinely walked

---

[6] Harrison additionally emphasizes that she testified at her deposition that her pants were wet after the fall. Harrison contends that additional video footage would show her wet pants. Again, Harrison's deposition testimony related to the water on her pants may demonstrate that the water existed, but it does not indicate how long water may have been on the floor.

11

the store and scanned for spills, debris, and dangerous conditions. *See* [25], Ex. 3 at p. 2-3. Regarding inspections on the day of Harrison's fall, Dunigan's affidavit provides as follows:

> 6. Prior to the Plaintiff's fall on May 27, 2021, I had walked across the area where Ms. Harrison fell multiple times and observed no water or other substance on the floor where Ms. Harrison fell – the last time being no more than twenty (20) minutes before her fall. Also, I had been working in the store office near where Ms. Harrison fell and observed no water or substance on the floor, nor observed anyone else slipping where Ms. Harrison fell. If there had been anything on the floor that Houchens' Food Giant store employees and/or I had prior knowledge about that posed a dangerous condition such as any liquid, water, or other substance, I would have cleaned it up and/or had someone else clean it up immediately.
>
> 7. No store employee or store customer had ever previously reported to me as store management working at the store that day or to any other management there that day, as I have since inquired, that any water or any substance existed on the floor prior to where and when Plaintiff fell on May 27, 2021. Notably, store employees and store customers were in the general area of Ms. Harrison's fall before she fell and based on my review of the video and personal knowledge, they did not see any water or substance on the floor to report.
>
> . . .
>
> 9. To my personal knowledge and as part of my investigative inquiry following the accident in order to report to the Store Manager, none of the Houchens Food Group Inc.'s Food Giant store's employees ever had prior knowledge on May 27, 2021, of any water, liquid, or other type of substance as being on the floor at the location of and before Harrison's fall.

[25], Ex. 3 at p. 2-3.[7]

Thus, while Harrison argues that the record lacks evidence of reasonable inspections, her argument is easily rejected. Houchens produced evidence that Dunigan inspected the floor no more

---

[7] Further contending that employees in the area did not observe a substance on the floor, Houchens points to a portion of the surveillance video where, prior to Harrison's fall, a nearby cashier appears to be gazing down at the floor in the area where Harrison fell, without indicating that she saw anything. *See* [25], Ex. 4 at 04:51, 06:41.

12

than 20 minutes prior to Harrison's fall, and Harrison has produced no evidence to create a factual dispute on this issue. Her speculation alone is insufficient. *See Jones*, 936 F.3d at 322.

Further, even if there was no evidence of inspections, the lack of evidence as to the length of time the water was on the floor is again fatal to Harrison's claim. In *Hearn*, where there was no evidence of inspections, the plaintiff argued that there was a question of fact as to whether reasonable inspections would have revealed the dangerous condition. 297 So. 3d at 297. The Mississippi Court of Appeals rejected that argument because Hearn failed to present evidence as to the length of time that the puddle existed on the floor. *Id.* The court, emphasizing that the puddle could have been on the floor for several minutes or several hours, held that "[e]ven if Piggly Wiggly failed to conduct reasonable inspections, there is simply no evidence to conclude that the problem existed for 'such a duration that the jury may reasonably conclude that due care would have discovered it.'" *Id.* (quoting *Jones v. Imperial Palace of Miss. LLC*, 147 So. 3d 318, 321 (Miss. 2014)). The same logic applies here. Even if Houchens failed to conduct reasonable inspections, Harrison has not produced evidence that the water existed for such a duration that an inspection would have revealed it.

In summary, Harrison has not submitted sufficient evidence to create a genuine issue of material fact as to whether Houchens had constructive knowledge of water on the floor. As noted, Harrison's testimony indicates that the water existed, but there is no evidence to suggest that the alleged water "existed for such a length of time that the operator, through the exercise of reasonable care, should have known of its existence," which is fatal to her claim. *Hearn*, 297 So. 3d at 296; *see also Byrne v. Wal-Mart Stores, Inc.*, 877 So. 2d 462, 466 (Miss. Ct. App. 2003) (where plaintiff testified that she did not know how long object had been on the floor, court held that plaintiff "failed to show that the object was on the floor long enough for the defendants to have notice and

13

remedy the situation"); *Dolgencorp, LLC*, 366 So. 3d at 842-43 (where plaintiff argued that substance must have been on the floor before she entered because no other customer or employee was present, except for cashier at register, court found speculation was insufficient to prove substance had been on floor long enough to provide constructive notice).

*Conclusion*

For the reasons set forth above, Houchens' Motion for Summary Judgment [25] is GRANTED. Harrison's claims are dismissed *with prejudice*. A Final Judgment will issue this day. This CASE is CLOSED.

SO ORDERED, this the 6th day of September, 2024.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE